IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
SEP 17 1999
JAMES W. McCORMACK, CLERK
By: _____ DEP. CLERK

VERNICESA BARNES                                    PLAINTIFF

v.                    LR: 98-CV-547

MCDONALD'S CORPORATION                              DEFENDANT

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

Pending is defendant's Motion for Summary Judgment. (Doc. No. 35). Plaintiff has responded to the Motion. (Doc. No. 37). For the reasons set forth below, the Motion for Summary Judgment is Granted.

Background

Beginning March 26, 1998. McDonald's Corporation began promoting sales of their food items by sponsorship of a game known as the "*1998 McDonald's Monopoly Game*." The Official Rules established two types of game-stamps: "Collect to Win" stamps and "Instant Win" stamps. The "Collect to Win" stamps indicate on their face that other game-stamps identified on the stamp have to be collected in order to win the prize identified on the stamp. "Instant Win" stamps do not indicate that other game-stamps must be collected in order to win the prize identified on the stamp. Thus, there are two ways to become a potential winner: (1) collect the entire series of official "Collect to win" stamps or (2) obtain a single official "Instant Win" stamp.

The Official Rules of the promotion were openly posted in all participating McDonald's

1

45

Participants in the game where given notice of the existence and location of these Official Rules by Game Boards supplied by McDonald's and by the Redemption Forms that aspiring winners of the major prizes had to sign and mail to the McDonald's Redemption Center for confirmation.

The Official Rules state in part:

> All game materials are subject to verification at a participating McDonald's or the Redemption Center, whichever is applicable. Game materials are null and void and will be rejected if not obtained through authorized, legitimate channels, or if they are mutilated, or tampered with in any way (except for the signed initials of the potential winner), ***or if they contain printing, typographical mechanical or other errors.*** All decisions of McDonald's and the Redemption Center are final binding and conclusive in all matters. (Emphasis added)

## FACTS

On April 3, 1998, the plaintiff, Vernicesa Barnes, went into a McDonald's restaurant to order hash browns. In accordance with the game's Official Rules, a game stamp was affixed to the container holding the plaintiff's hash browns. Plaintiff removed and examined the game piece and found that it stated: "$200,000 Dream Home Cash--Stamp 818---Need Stamps 818, 819, & 820 to Win---Instant Winner!"

Later that day, plaintiff returned to the McDonald's restaurant and filled out the necessary forms to begin the redemption process. In accordance with the Official Rules, the game stamp and a signed redemption form were then mailed to the McDonald's Redemption Center. It was there that the stamp's authenticity was to be determined under the Official Rules which state: "You are not a winner of any prize until your official game stamp(s) has been verified at the Redemption Center or a participating McDonald's, which ever is applicable." Before mailing the redemption form, Plaintiff initialed a specified box on the form by which she agreed that she had

2

"read, understood, complied with and...[accepted] all the Official Rules of the Monopoly Game at McDonalds." (McDonald's Redemption Form)

On May 1, 1998, plaintiff received a letter from the Redemption Center telling her that the game-stamp would not be honored. The notification stated that the game-stamp was a mis-cut "Collect to Win" game stamp and was therefore null and void under the Official Rules.

Plaintiff filed suit on March 3, 1998 asserting three claims: negligence, deceptive trade practices, and breach of contract. That complaint has since been amended to include a Prize Promotion Act § 4-102-106 cause of action. This Court has dismissed the allegations of negligence and deceptive trade practices but withheld its ruling on the breach of contract claim until adequate discovery was provided by the defendants. The requested discovery has been provided and defendant now renews their Summary Judgment motion on the plaintiff's breach of contract claim.

## SUMMARY JUDGMENT

Summary Judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. Holloway v. Lockhart, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. Based on this standard, the non-moving party is entitled to have the facts viewed in the light most favorable to her and all reasonable inferences drawn in her favor. Reed v. ULS Corp., 1999 WL 336284, at *1 (8th Cir. May 28, 1999). The Court finds the defendant has a properly supported motion and that the burden has shifted to the plaintiffs to demonstrate the existence of a genuine dispute. City of Mt. Pleasant v. Associated Elec. Coop.,

3

838 F2d 268, 273-74(8th Cir. 1988). In this situation, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Plaintiff's first argument is that discovery answers provided by the defendant have been inadequate and therefore Summary Judgment is improper. Summary Judgment is only proper after the non-moving party has had adequate time to engage in discovery. Stanback v. Best Diversified Products, Inc., 1999 WL 285481 at *6 (8th Cir. May 10, 1999), Nat'l Bank of Commerce, of El Dorado, Ark. v. Dow Chem. Co., 165 F3d 602. 606 (8th Cir. 1999). Here, however, the Court finds that adequate time has been granted and that discovery has been sufficient on the breach of contract issue.

After the hearing of July 14th, 1999, the Court ordered the defendants to answer six specific interrogatories which the plaintiff claimed were as important to their Summary Judgment response. Those interrogatories have been answered, and the parties have had ample time to either receive discovery or force discovery through the Court. There is no question that discovery has been adequate to prove whether a contract existed, and if so, whether it was breached.

As to whether a contract was breached, plaintiff's argument is summarized in four propositions: (1) that the Official Rules of the McDonald's promotion are null and void in that they conflict with the language of the Arkansas Prize Promotion Act (A.C.A. § 4-102-106); (2) that under that statute's language, the terms of the contract should be found solely on the game

4

stamp itself; (3) there were no restrictions on the game-stamp itself, no restrictions apply and the possession of the stamp itself contractually bound the defendant; and, finally, (4) the defendants did not pay and therefore breached the $200,000 contract.

Plaintiff's position on the breach of contract issue is so inter-related to the Prize Promotion claim, that in deciding the Summary Judgment motion on the breach of contract issue, the Court must, by necessity, address the the Prize Promotion Act Summary Judgment motion as well.

Plaintiff has not yet responded to defendants motion for Summary Judgment on the Prize Promotion cause of action, but plaintiff has argued both during the telephone conference and by brief how and why this statute defines the contractual relationship between the parties. The Court, having read all of plaintiff's offerings on this issue to date and the statute itself, is adequately prepared to address the implications of this statute on the breach of contract claim.

THE PRIZE PROMOTION ACT HAS NOT BEEN VIOLATED

A.C.A.§ 4-102-106 was designed to prevent misleading and deceptive prize promotions. The statute requires that Arkansas consumers be provided with all relevant information necessary to make an informed decisions concerning sweepstakes, contests, and prize promotions. Sponsors of prize promotions like the McDonald's Monopoly are required to disclose various items of relevant information. Of primary relevance to this discussion is the statute's requirement that the consumer get notice of restrictions that might apply and a description of

those restrictions. A.C.A § 4-102-106 (b)(5).

Plaintiff argues that the game-stamp itself was the only "prize notice" given and that it contained no restrictions or notice of restrictions. Furthermore, plaintiff contends that defendants violated the language of the statute by not having these restrictions on the face of the game-stamp and that this violation of statutory language voids the contract provisions found in the defendant's Official Rules.

The Court finds this argument unpersuasive on three levels. First, the game stamp itself was not the only "prize notice" given to the plaintiff. Plaintiff admits that prior to her receiving the mis-cut game stamp she had in her possession a McDonald's Monopoly Game Board. That board specifically states: (1) "YOU MUST READ AND COMPLY WITH THE COMPLETE OFFICIAL RULES POSTED AT PARTICIPATING McDONALD'S RESTAURANTS"(printed in bright red, all caps, and bold face); (2) "IF YOU THINK YOU HAVE A WINNING GAME STAMP, READ THE OFFICIAL RULES FOR REDEMPTION INSTRUCTIONS" (printed in all caps and bold face); and (3) "SEE OFFICIAL RULES FOR PRIZES, ODDS AND ALL OTHER DETAILS" (printed in all capital letters).

These Games Boards were widely dispersed to the public by an advertising circular promoting McDonald's Monopoly which is placed in a large number of Sunday newspapers. Additionally, throughout the running of the game, Game Boards were available at McDonald's stores to be picked up by anyone interested in playing. The Court finds plaintiff had possession of the Game Board and had notice of a very relevant game restriction -- that the game had rules

to be followed.

Second, the Court finds it relevant that the Official Rules were openly posted in the restaurant which plaintiff admits to eating at frequently. A.C.A.§4-102-106(a) reads:

> No sponsor shall offer a prize, nor shall a sponsor use any solicitation, whether written or oral, and however communicated, that offers a prize, <u>unless the person to whom such offer is made has first received a written prize notice</u> containing the information required in subsections (b) and (c) of this section. (Emphasis added).

All of the information required under subsections (b) and (c) is found in the Official Rules which were openly posted within the McDonalds. The Court finds that these posted rules serve as a fundament part of a written prize notice, especially in light of the references made to these rules on the Game Board and the Redemption Form. Furthermore, placing the rules and restrictions openly in the exact building where the prize stamps are being given away puts all participants on notice that there are rules, which are restrictions.

Third, the defendant signed a Redemption Form which put the plaintiff on notice by advising: (1) "You are not a winner until your game materials are verified at the Redemption Center, and until you have complied with the Official Rules" (all in bold-face type), and (2) "Please read the Official Rules posted at participating McDonald's restaurants before sending your required game materials to the Redemption Center." Moreover, the plaintiff filled out the redemption form and initialed a portion of the envelope that read: "I hereby declare that I have read, understood, complied with and do accept all of the Official Rules of the Monopoly Game at

7

McDonald's."

The Court finds that McDonald's substantially complied with the language of the Arkansas Prize Promotion Act and that the game-stamp was not the only prize notice given. With that in mind, the Court concludes that the Official Rules of the McDonald's Monopoly game serve as the controlling contract.

## DEFENDANT HAS BREACHED NO CONTRACT

With its Official Rules, defendant put forth an offer of a unilateral contract, which could only be accepted by performance of the contract's terms. In order to win the major prizes offered by the defendant, the mere possession of a game prize stamp was not enough to perform. To win these more substantial prizes, the plaintiff had to complete three steps as described in the game's Official Rules. Only upon the completion of these three steps of performance would McDonald's become legally obligated to tender the prize.

The first step required by the game's Official Rules was that the plaintiff actually have possession of a valid, winning ticket. Second, plaintiff was required to sign a redemption form acknowledging that she understood and accepted the Official Rules. Third, plaintiff had to mail the redemption form and the game stamp to the McDonald's redemption center for a validation procedure.

Plaintiff did not possess a valid, winning ticket, and therefore, the plaintiff could not comply with the rules and conditions of the promotion. Waible v. McDonald's Corp., 935 F2d

8

924, 926 (8th Cir. 1991). This logic follows the general rule in most jurisdictions that a contractual relationship exists between the promoter of a contest and the participant of the contest only if the participant complies with the terms of the contest rules. Johnson v. BP Oil Co., 602 So.2d 885,888 (1992); See generally 64 ALR 4th 1021, 1045-52 (1988).

The McDonald Redemption Committee made a decision that game-stamp contained "printing, typographical, mechanical or other errors" and was therefore "null and void" under the terms of the Official Rules which the plaintiff agreed to. This Court should uphold the decision of the Redemption Committee as long as it is not arbitrary, capricious, or made in bad faith. See Johnson, 602 So. At 888 ("We adopt the rule that running a promotional contest is in the nature of an offer and that an enforceable contract is formed when the party accepts that offer and provides consideration by entering the contest and complying with all the terms of the offer. We further adopt the rule that unless there was fraud, irregularity, intentional misconduct, gross mistake, or lack of good faith involved in the contest, the judging organization's decision is binding.") Plaintiff does not argue the committee acted arbitrarily, capriciously, or in bad faith, and the game-stamp submitted by the plaintiff is obviously mis-cut to all but those who will not see. Therefore, it was impossible for plaintiff to perform the unilateral contract and no breach can be established.

This case is closely analogous to the Waible v. McDonald's Corporation, 935 F2d 924 (8th Cir. 1991). In that case, the plaintiff submitted a game token to the McDonald's redemption center which was from an entirely different promotion being conducted by a grocery store. That

plaintiff too argued that mere possession was acceptance of McDonald's offer. The Eighth Circuit stated:

> The token received by Waible was an offer for a unilateral contract that could only be accepted by performing all the terms and conditions of the promotion. She did not comply with all the terms and conditions of the promotion because the token she submitted was not an official token. Thus, the offer was not properly accepted. Id at 926.

In this case, Ms. Barnes was equally unable to accept the unilateral contract without having a valid, winning game stamp. The Official Rules of the contest state:

> All game materials are subject to verification at a participating McDonald's or the Redemption Center, whichever is applicable. Game materials are **null and void** and will be rejected if not obtained through authorized, legitimate channels, or if they are mutilated, or tampered with in any way (except for the signed initials of the potential winner), *or if they contain printing, typographical mechanical or other errors.* All decisions of McDonald's and the Redemption Center are final binding and conclusive in all matters. (Emphasis added)

The Redemption's Committee's decision that the stamp was null and void simply reflects the language of the Official Rules.

## Conclusion

A.C.A. § 4-102-106 does not define the contractual relationship between the parties; therefore, the Official Rules serve as the controlling contract. Without possession of a valid

10

game-stamp, the plaintiff was unable to perform the unilateral contract. This lack of compliance results in no contract, and no duty to perform by the defendants, i.e., without a contract there can be no breach. Summary Judgment is GRANTED as to both the breach of contract claim and the Prize Promotion Act violation.

IT IS SO ORDERED this 16th day of September 1999.

_____
UNITED STATES DISTRICT JUDGE

THIS DOCUMENT ENTERED ON
DOCKET SHEET IN COMPLIANCE
WITH RULE 58 AND/OR 79(a) FRCP
ON 9/17/99 BY _____

lb

UNITED STATES DISTRICT COURT
Eastern District of Arkansas
U.S. Post Office & Court House
600 West Capitol, Suite 402
Little Rock, Arkansas 72201-3325

September 17, 1999

* * MAILING CERTIFICATE OF CLERK * *

Re:  4:98-cv-00547.

True and correct copies of the attached were mailed by the clerk to the following:

    Kevin C. May, Esq.
    Latham & Watkins
    Sears Tower
    233 South Wacker Drive
    Suite 5800
    Chicago, IL   60606

    David S. Foster, Esq.
    Latham & Watkins
    Sears Tower
    233 South Wacker Drive
    Suite 5800
    Chicago, IL   60606

    W. Lee Tucker, Esq.
    Boswell, Tucker & Brewster
    Bryant Center
    Post Office Box 798
    Bryant, AR   72089-0798

    Willard Proctor Jr., Esq.
    Proctor & Associates
    1619 Broadway
    Little Rock, AR   72206

    press, post

                                             James W. McCormack, Clerk

    9/17/99                                         Linda Bell
Date:  _____     BY:  _____